UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRAND COUPON NETWORK                    CIVIL ACTION

VERSUS                                          11-556-BAJ-DLD

CATALINA MARKETING CORP.,
PAMELA SAMNIEGO, JOE HENSON,
AND L. DICK BUELL

## RULING ON MOTION TO DISMISS

This matter is before the Court on a motion by Defendants, Catalina Marketing Corporation, Pamela Samniego, Joe Henson, and L. Dick Buell ("Defendants"), to dismiss claims by Plaintiff, Brand Coupon Network ("BCN" or "Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted (doc. 3-1). Plaintiff opposes the motion (doc. 13) and Defendants have filed a surreply (doc. 16). Jurisdiction is grounded in 28 U.S.C. § 1332.

## STATEMENT OF FACTS

Plaintiff, Brand Coupon Network ("BCN" or "Plaintiff"), asserts that it is in the business of "promoting and selling consumer printable coupon products and coupon technology" using the Internet. Since its formation in 2004, BCN alleges that it has operated and promoted its products via sales and marketing efforts. Subsequently, Daniel Abraham, founder and CEO of BCN, joined the Board of Directors of the Association of Coupon Professionals ("ACP") where he

"interacted with others involved in the coupon selling industry – both print and internet". (doc. 1-3, p. 6).

On April 27, 2010, Mr. Abraham allegedly discussed information regarding the Internet coupon industry, as well as BCN's strategies and business plans with agents of Catalina Marketing Corporation ("Catalina"), and fellow ACP members, Pam Samniego and Joe Henson. Plaintiff alleges that following this discussion, Plaintiff discovered that Defendants had entered the Internet coupon business "on or about April 2010" via the remarkably similar name "www.CouponNetwork.com"[1]. Plaintiff contends that he immediately attempted to reach the CEO of Catalina, Mr. Dick Buell, in an effort to address the matter. Mr. Abraham allegedly demanded in October of 2010 that Defendants cease and desist using the similar website name as to quell any customer confusion and identity infringement. Catalina declined to accede to this request. (doc. 1-3, p. 6-7).

On July 7, 2011, Plaintiff filed several claims against Defendants in the Nineteenth Judicial District Court, including: (1) detrimental reliance; (2) unjust enrichment; (3) unfair trade practices; (4) trade secret violation; (5) trademark infringement; (6) breach of loyalty, good faith and fair dealing; and (7) tortious conduct (doc. 1-3 , p. 7-9). As a result of Defendants' refusal to cease their alleged illegal activities, Plaintiff claims that it has suffered significant financial harm. (doc. 1-3, p. 7). In addition to alleged customer confusion, Plaintiff asserts

---

[1] Compare to Plaintiff's "www.BrandCouponNetwork.com".

that current and potential investors have abandoned the company for fear that Plaintiff will be unable to maintain differentiation and a separate commercial identity in the presence of Defendants' website "www.CouponNetwork.com". (*Id.*)

Defendants removed the present action to federal court based upon 28 U.S.C § 1441, and brought this motion to dismiss the complaint as time-barred and insufficiently alleged under the required pleading standards (doc. 3-1, p. 2).

## LAW AND DISCUSSION

### I. PRESCRIPTION

Prescription begins to toll when the plaintiff becomes aware of the general facts or circumstances that constitute a tort action against them, be it actual or constructive knowledge. La. C.C. arts. 3492, 3493; *see Babineaux v. Louisiana Dep't of Transp. & Dev.*, 927 So.2d 1121, 1123 (La.App. 1st Cir. 2005); *Barber v. Employers Ins. Co. of Wausau*, So.3d, 2011-0357 (La.App. 1 Cir. 6/28/12). Absolute knowledge of the harm is not a prerequisite for the running of prescription, but rather, constructive knowledge exists when the plaintiff "possesses information sufficient to incite curiosity . . . or put a reasonable person on guard to call for inquiry". (*Id.*); *see also Oil Ins. Ltd. v. Dow Chem. Co.*, 977 So.2d 18, 23 (La.App. 1st Cir. 2007)[2]; *Terrel v. Perkins*, 704 So.2d 35, 39 (La.App. 1 Cir. 11/7/97). Moreover, in the absence of evidence indicating a specific date of injury, "the objection of prescription must be decided on the facts

---

[2] (where the prescription began when the insurer first *contemplated* the contractor's welding work as a possible cause of the seepage claims).

alleged in the petition". *Bracken v. Payne and Keller Co., Inc.*, 970 So.2d 582, 587 (La.App. 1st Cir. 9/5/07); *Putman v. Quality Distribution, Inc.*, 77 So.3d 318 (La.App. 1 Cir. 9/30/11); *Daisey v. Time Warner*, 761 So.2d 564, 567 (La.App. 1st Cir. 11/5/99)

### a. *Claims I, II, III, V, VI and VII are time-barred under Louisiana law.*

Plaintiff contends that the aforementioned claims are not time-barred by the state prescription period because, although Mr. Abraham knew of the existence of Defendants' website in April 2010, it was not until October 2010 that Plaintiff had actual knowledge of any injury (doc. 13, p. 6). As such, Plaintiff asserts that the prescriptive period did not begin until October 2010. (doc. 13, p. 7).

However, Plaintiff's contention is largely diminished and defeated by his own allegations in the original complaint. According to the original complaint, Plaintiff attempted to contact Mr. Buell, CEO of Catalina Marketing Corporation, "immediately" after learning of Coupon Network's existence in late-April or early-May 2010 (doc. 1-3, p. 6). Plaintiff's memorandum in opposition to the present motion appears to factually augment the complaint timeline. In such, Plaintiff asserts that the previously mentioned contact was not attempted until October 2010, five months after the time in which he became aware of Defendants' entrance into the Internet coupon business (doc. 13, p. 6). However, Plaintiff's specific date of contact with Defendants is immaterial. According to the original

4

petition, Plaintiff had actual knowledge of the alleged harm following the discovery of the implicated website in April or May of 2010. (*Id.*)

Moreover, Mr. Abraham's knowledge of Coupon Network's presence in the Internet coupon business obviously incited the requisite curiosity and inquiry necessary for a showing of constructive notice. Indeed, this knowledge was apparently a substantial impetus to compel an "immediate" cause for contact with Defendants following the April 27, 2010 meeting (doc. 1-3, p. 6). A reasonable person could infer a cause for action after discovering the markedly similar website name[3] and allegedly identical business identity that emerges mere days after disclosing "confidential information" (doc. 1-3, p. 7).

Plaintiff maintained actual knowledge of the alleged illegal actions of Defendants in April/May of 2010 and, indeed, acted to thwart these actions, failing to file this legal action until July 7, 2011 (doc. 16, p. 7-8). Therefore, the prescriptive period for the aforementioned claims began in April/May 2010 and expired in April/May 2011.

Plaintiff's claims I (detrimental reliance)[4], II (unjust enrichment)[5], VI (breach of duty good faith and fair dealing), and VII (tortious conduct)[6] are subject to a one year prescriptive period under Louisiana law. LSA-C.C. art. 3492. Therefore, because Plaintiff did not file the present action until July 2011, several months

---

[3] (CouponNetwork.com / BrandCouponNetwork.com)
[4] LSA-C.C. art. 1967.
[5] LSA-C.C. art. 2298.
[6] LA-C.C. art. 2315.

past the expiration of the one year prescriptive period, claims I, II, VI, and VII are dismissed as time-barred.

Plaintiff's claims III (unfair trade practice) and V (trademark infringement) are subject to a one year peremptive[7] period under the Louisiana Unfair Trade Practices Act ("LUTPA"). La. Rev. Stat. § 51:1409(e). As such, claims III and V are dismissed as time-barred because Plaintiff brought the present action after the peremptive period for these claims had tolled in April/May 2011.

### b. *Count VII (tortious conduct) is not saved by contra non valentem.*

Although La. C.C. art. 3467 provides that "prescription runs against all persons unless exception is made by legislation", the Supreme Court of Louisiana has adopted the "strictly construed", jurisprudential doctrine of *contra non valentem* as an exception. *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 517 (5th Cir. 2009). Accordingly, the Court has recognized four factual situations for application of *contra non valentem*:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or

---

[7] Defendants submit, and the Court agrees, that although La. Rev. Stat. § 51:1409(e) uses the word "prescribed", this does not affect the analysis, as LUTPA was enacted 10 years before the article defining peremption (doc. 16, p. 12). *CamSoft Data Sys., Inc. v. S. Electronics Supply, Inc.*, CIV.A. 09-1047-JJB, 2011 WL 3204701 (M.D. La. July 27, 2011) (noting the "strong line of Louisiana jurisprudence" denying application of *contra non valentem* to LUTPA claims); *see also Glod v. Baker*, 899 So.2d 642, 646 (La.App. 3d Cir. 2005).

> (4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.

*Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 245 (La. 10/19/10) (quoting *Plaquemines Parish Com'n Council v. Delta Development Co., Inc.*, 502 So.2d 1034 (La. 1987)); *Causby v. Perque Flooring Covering*, 707 So.2d 23, 25 (La. 1998).

In order to delay or suspend a liberative prescription period under *contra non valentem* one must establish that there is: (1) continuing action, and (2) continuing damage. *Nat'l Council on Comp. Ins. v. Quixx Temp. Services, Inc.*, 665 So. 2d 120, 122 (La. Ct. App. 1995); *see also Bustamento v. Tucker*, 607 So. 2d 532 (La. 1992) (where separate and continuous incidents of sexual harassment by a co-worker justified suspension of prescription under *contra non valentem*); *South Central Bell Telephone Co. v. Texaco, Inc.*, 418 So.2d 531, 532-33 (La. 1982) (holding that "prescription runs from the date of the last harmful act"); *Doe v. Doe*, 671 So. 2d 466 (La.App. 1st Cir. 1995) (where intermittent acts of abuse that arose independently from each other did not invoke *contra non valentem*). Thus, a continuing tort "is occasioned by unlawful acts, not the continuation of the ill effects of an original wrongful act". *Crump v. Sabine River Authority*, 737 So.2d 720, 728 (La. 6/29/99).

Defendants contend that *contra non valentem* is inapplicable in the present case because Plaintiff has failed to establish a plausible claim of ongoing and

7

repeated harm (doc. 16, p. 3). Moreover, Defendants assert that the type of tortious conduct alleged is inappropriate for application of the doctrine (*Id.*, p. 3-4).

In the case *sub judice*, the Plaintiff's contentions fall within the fourth judicially crafted category of circumstances justifying the application of *contra non valentem*[8]. However, Plaintiff has failed to satisfy the first element of *contra non valentem*, as the existence of a website does not constitute a continuing, damaging action. The present case is analogous to *Crump v. Sabine River Authority*, where a property owner sued the river authority claiming that a canal dug on the authority's property diverted water from the bayou flowing over the owner's property. 737 So.2d 720, 728 (La. 6/29/99). However, the Court held that the continuing ill effects from the presence of the canal arose from a single tortious act, not the compilation of perpetual and contextually related acts. *Id.*; *see also Kendrick v. St. John the Baptist* Parish, 734 So.2d 717, 1999 WL 125954 (La.App. 5th Cir. 3/10/99) (duty to construct patio in conformity with parish regulations was breached upon completion of the patio and was not continuing breach). Similar to *Crump*, the ill effects alleged by Plaintiff are incident to the initial creation of Defendants' website. Although possibly damaging, the mere existence of Defendants' website does not constitute repeated, continuous, and inherently related tortious acts. Plaintiff has offered no

---

[8] "(4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant." *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 245 (La. 10/19/10).

substantial evidence to show continuous tortious conduct from Defendants; and further, the type of conduct exhibited by the creation of a website is entirely similar to that of the defendant in *Crump*.

Moreover, Defendants' duty to remove the allegedly damaging website from operation would stem from its obligation under La. Civ. Code article 2315 to repair any damage caused by tortious conduct. However, as the Louisiana Supreme Court in *Crump* noted, "the breach of duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends . . . prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor". *Id.* at 729.

Thus, because Plaintiff has failed to satisfy the "continuing action" element of *contra non valentem*, the doctrine is inapplicable in the present case. Accordingly, *contra non valentem* does not delay the prescription of Plaintiff's claims, specifically, claim VII (tortious conduct).

## II. CLAIM IV (TRADE SECRET VIOLATION) IS INSUFFICIENTLY ALLEGED.

Pursuant to Fed. R. Civ. P. Rule 12(b)(6), a defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief may be granted." The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Fed. R. Civ. P. Rule 8(a)(2), which provides, in relevant part, that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *In re McCoy*, 666 F.3d 924, 926 (5th Cir. Jan. 4, 2012). "The ultimate question in a Rule 12(b)(6) motion is

whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Id.* The complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court is tasked with determining whether Plaintiff has stated a legally cognizable claim that is plausible, not evaluating Plaintiff's likelihood of success on the claims. *Lone Star Fund*, 594 F.3d at 387.

Under the Louisiana Uniform Trade Secrets Act ("LUTSA"), a plaintiff is required to show that: (1) a protectable trade secret existed; (2) the plaintiff made reasonable efforts to maintain the secrecy of its alleged secret; and (3) the plaintiff and the defendant had a contractual or confidential relationship imposing a duty of non-disclosure upon the defendant. L.A. R.S. 51:1431(4); *Johnson Controls, Inc. v. Guidry*, 724 F.Supp.2d 612, 629 (W.D. La. 2010); *Dorsey v. Northern Life Ins., Co.*, WL 2036738, at *12-13 (E.D. La. 2005). Moreover, in order to survive a 12(b)(6) motion, "plaintiffs must plead specific facts, not mere conclusory allegations". *Dorsey v. Northern Life Ins., Co.*, WL 2036738, at *12-13 (E.D. La. 2005) (the Court denying "conclusory allegations or unwarranted

deductions of fact"); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 311-12 (5th Cir. 2002).

There are no allegations within the Complaint from which it could be inferred that Plaintiff made any effort to maintain secrecy with regard to Plaintiff's "trade secrets" vis-à-vis the Defendants. Plaintiff has proffered no evidence that a trade secret exists, except for Plaintiff's website name (doc. 1-3, p. 8). This Court does not recognize the secrecy in Plaintiff's website name or website design, as they are freely viewable to any individual with an internet connection. Moreover, Plaintiff's contention that reasonable efforts to maintain the secrecy of the website name and/or design is largely defeated by the fact that Plaintiff knowingly and openly discussed the alleged "secrets" with Defendants, with whom he maintained no contractual or confidential relationship. Accordingly, in the absence of specific facts, this Court declines to accept or formulate its own conclusory allegations from Plaintiff's bare pleadings. As such, claim IV (trade secrets violation) is dismissed as insufficiently alleged pursuant to the applicable pleading standards.

### III. CLAIMS AGAINST INDIVIDUAL DEFENDANTS

Plaintiff contends that Ms. Samniego, Mr. Henson, Mr. Buell are jointly and severally liable for the damages against Plaintiff because they had personal and individual duties to conduct themselves in good faith and fairness according to the rules of the ACP, of which they were members (doc. 13, p. 27). Furthermore,

Plaintiff claims that they breached this "personal duty" by using the "confidential information" disclosed to them by Plaintiff (doc. 13, p. 27).

Plaintiff's assertion of a "personal duty" is conclusory. Plaintiff's claims do not support the existence of individual motives for the alleged damaging actions. Moreover, as agents of Catalina Marketing Corporation, Henson and Samniego acted solely within the scope of their role as agents and employees to further the commercial interests of the company through implementation of information and techniques they believed to be beneficial. *See Korson v. Independence Mall I, Ltd.*, 595 So.2d 1174, 1178 (La.App. 5th Cir. 1992) (dismissing suit where no claims showed that the defendant had a personal duty towards the plaintiff or acted as anything beyond an agent or employee); *Terrebonne Concrete, LLC v. CEC Enterprises, LLC*, 76 So.3d 502, 512 (La.App. 1 Cir. 8/17/11) ("Corporate officers and directors cannot be held personally liable . . . for acts done on the behalf of the corporation, especially in a commercial context").

Therefore, because the Plaintiff's allegations fail to show an established, individual legal duty owed by the Defendants to the Plaintiff, the claims against Ms. Samniego, Mr. Henson, and Mr. Buell are dismissed.

## CONCLUSION

For the foregoing reasons, the motion to dismiss all claims by Defendants (doc. 3-1), Catalina Marketing Corporation, Pamela Samniego, Joe Henson, and L. Dick Buell, pursuant to Federal Rule of Civil Procedure 12(b)(6), is hereby **GRANTED**.

Baton Rouge, Louisiana, September 6, 2012.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA